# EXHIBIT 1



Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and its implementing regulations, 6 C.F.R. § 5.1 et seq, Just Futures Law ("JFL") seeks records from the U.S. Department of Homeland Security ("DHS") (herein "agency") related to DHS use of products and technologies facilitating location, identity matching, tracking, and monitoring of individuals based on, *inter alia*, bankruptcy records, consumer information, credit history, communications service use, and other commercial information. JFL specifically requests information and documents pertaining to DHS use of Accurint Virtual Crime Center ("AVCC"), a database provided by the RELX Group through RELX subsidiary LexisNexis, and similar technologies.

We ask that you direct this request to Homeland Security Investigations ("HSI") and Enforcement and Removal Operations ("ERO") of Immigration and Customs Enforcement ("ICE"), including its National Criminal Analysis and Targeting Center.

**Background**

In recent years, DHS has made increasing use of data collection, sharing, and analysis in its immigration enforcement actions. As such, data surveillance presently plays a growing role in the agency's approach to its mission. In order to access larger troves of information and enhance its capacity to sort and analyze intelligence, DHS has entered into agreements with private corporations specializing in data management and delivery. These contracts are often sizable and pay for services regularly amounting to millions of dollars in agency spending for collaboration with data accumulation companies.[1] CBP's current five-year contract with LexisNexis is worth nearly $16 million.[2]

DHS has described the services delivered by LexisNexis and other companies as "mission critical,"[3] yet it has not released details regarding what those services consist of. As a result,

---

[1] *See* Sam Biddle, *LexisNexis to Provide Giant Database of Personal Information to ICE*, Intercept (Apr. 2, 2021), https://theintercept.com/2021/04/02/ice-database-surveillancelexisnexis.

[2] Tonya Riley, *U.S. Border Agency's Data Broker Deal Masks Spy Tools, Critics Say*, Bloomberg L. News (Nov. 16, 2023), https://news.bloomberglaw.com/privacy-and-data-security/us-border-agencys-data-broker-deal-masks-spy-tools-critics-say.

[3] *See* McKenzie Funk, *How ICE Picks Its Targets in the Surveillance Age*, N.Y. Times Mag. (June 7, 2021), https://www.nytimes.com/2019/10/02/magazine/ice-surveillance-deportation.html.

1

consumers have been left in the dark about how their personal data is collected and analyzed, despite the potential invasion of their rights.[4] FOIA requests have therefore been essential to public understanding of the civil rights and privacy repercussions of DHS contracts with data companies. Documents obtained by JFL concerning the agency's contract with LexisNexis,[5] for example, prompted significant news coverage of the dangers posed by DHS use of mass surveillance technology[6] and served as key evidence for a recent report on artificial intelligence in immigration enforcement.[7]

DHS budget requests and planning documents indicate that its reliance on private data companies continues to grow. The agency has publicly committed to expanding its use of artificial intelligence for data analysis and other purposes,[8] relying on private contractors to do so.[9] DHS budget requests for Fiscal Year 2025 include funding allocated for LexisNexis services[10] and over $5 million for artificial intelligence development.[11] As DHS technology use accelerates, the need for transparency to maintain robust public conversation around data privacy grows more urgent.

This request seeks to fill gaps in public knowledge regarding governmental use of an expansive database created by a private company to collect information about ordinary individuals. The participation of private third-parties in these areas poses risks to the public, because private parties may not be adequately regulated or subject to the same types of scrutiny as are government actors. Similar concerns have been raised in relation to the government's use of

---

[4] *See* Drew Harwell, *ICE Investigators Used a Private Utility Database Covering Millions to Pursue Immigration Violations*, Wash. Post (Feb. 26, 2021),
https://www.washingtonpost.com/technology/2021/02/26/ice-private-utility-data.

[5] *See* Just Futures Law, *Fact Sheet: New Records Provide Details on ICE's Mass Use of LexisNexis Accurint to Surveil Immigrants* (June 8, 2022),
https://static1.squarespace.com/static/62c3198c117dd661bd99eb3a/t/635c026f7272f54fa9de62f1/1666974319996/Data+Brokers+Fact+Sheet+Final+6.8.22.pdf.

[6] *See, e.g.*, Riley, *supra* note 2; Joseph Cox, *LexisNexis 'Virtual Crime Center' Makes Millions Selling to the Government*, Vice (Feb. 2, 2023), https://www.vice.com/en/article/y3p8j5/lexisnexis-selling-data-government; Maurizio Guerrero, *Surveillance Capitalism Has Taken over Immigration Enforcement—Stifling Dissent and Sowing Fear for Profit*, Prism (Jan. 9, 2024),
https://prismreports.org/2024/01/09/surveillance-capitalism-taken-over-immigration-enforcement; Sam Biddle, *LexisNexis Sold Powerful Spy Tools to U.S. Customs and Border Protection*, Intercept (Nov. 16, 2023), https://theintercept.com/2023/11/16/lexisnexis-cbp-surveillance-border.

[7] Just Futures Law & Mijente, *Automating Deportation: The Artificial Intelligence Behind the Department of Homeland Security's Immigration Enforcement Regime* (June 2024),
https://drive.google.com/file/d/1NIjUkyIItCQCJqj2LtbCpzOseZ92eaQv/view.

[8] *See Department of Homeland Security Artificial Intelligence Roadmap 2024*, U.S. Dep't of Homeland Sec. (2024), https://www.dhs.gov/sites/default/files/2024-03/24_0315_ocio_roadmap_artificialintelligence-ciov3-signed-508.pdf.

[9] *See* Cecilia Kang, *The Department of Homeland Security is Embracing A.I.*, N.Y. Times (Mar. 18, 2024), https://www.nytimes.com/2024/03/18/business/homeland-security-artificial-intelligence.html.

[10] U.S. Dep't of Homeland Sec., U.S. Immigration and Customs Enforcement Budget Overview: Fiscal Year 2025 Congressional Justification,
https://www.dhs.gov/sites/default/files/2024-04/2024_0308_us_immigration_and_customs_enforcement.pdf (identifying Lexis/Nexis among "Fugitive Operations Contracts").

[11] U.S. Dep't of Homeland Sec., FY 2025 Budget in Brief, 4,
https://www.dhs.gov/sites/default/files/2024-04/2024_0311_fy_2025_budget_in_brief.pdf.

2

private contractors in the context of the criminal legal system, immigration detention, and military operations. Additionally, the public should have information about the extent to which data concerning their behaviors and activities as consumers and in other aspects of life are recorded, bought, and sold to the government by private data companies. The public should have the opportunity to object where their information is reviewed and used by the government without knowledge or consent of the individual. Past FOIA requests have been integral to providing the public with that opportunity. For this reason, our request is critical to the public interest, and requires an expedient response from your agency.

**Records Requested**

I.      The agency's most up-to-date versions of the records entitled "DHS-ICE AVCC USAGE" (attached as Exhibit A).

II.     Any records reflecting email communications containing logs, datasets, reports, and/or other data compilations of the agency's queries of AVCC after September 30, 2021, including for example records similar to those attached as Exhibit B.

III.    Any additional logs, datasets, reports, and/or other data compilations showing the following information about the agency's queries of AVCC after September 30, 2021:
   A. The number, timing, type, and/or purpose of the queries.
   B. The queries' source, including but not limited to particular subagencies, regions, and/or users.
   C. The number of queries resulting in warrant applications, warrants, arrests, and/or prosecutions.

IV.     Any reports or other materials prepared after March 1, 2021, documenting trends over time in agency queries of databases accessed pursuant to a Law Enforcement Investigative Database Subscription contract.

**Requester**

Just Futures Law (JFL) is a transformational immigration lawyering organization that provides legal support for grassroots organizations engaged in making critical interventions in United States deportation and detention systems and policies. JFL staff maintain close relationships with organizations and activists who seek to understand the scope and range of government surveillance and criminalization. JFL staff have decades of experience in providing expert legal advice, written legal resources, and training for immigration attorneys and criminal defense attorneys on the immigration consequences of the criminal legal system. JFL has a significant interest in the administration of government surveillance and data collection. JFL has already published a number of reports on government surveillance, including reports around surveillance

3

under COVID-19 and ICE's EDDIE program;[12] a report covering the use of artificial intelligence for surveillance;[13] and a fact sheet concerning surveillance tool AVCC,[14] the subject of this request.

**Request for Fee Waiver**

Requester further seeks a limitation or waiver of processing (search and review) fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media . . ."); 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). See also 6 C.F.R. § 5.11(d)(1). That provision should be "liberally construed in favor of waivers for noncommercial requestors." Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

*1. Release of the requested records is in the public interest.*

The records requested will contribute significantly to public understanding of the government's operations or activities. Under 6 C.F.R. § 5.11(k)(2), the following factors are to be considered in determining whether a disclosure is in the public interest: (i) whether the subject of the requested records concerns "the operations or activities of the government"; (ii) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (iii) whether disclosure of the requested information will contribute to "public understanding," that is, "the understanding of a reasonably broad audience of persons interested in the subject"; and (iv) whether disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *See* 6 C.F.R. § 5.11(k)(2)(i)– (iv).

Each of these considerations is satisfied here. First, the records requested pertain directly to "operations or activities" of the federal government: specifically, how the agency incorporates services from a private company, LexisNexis, into its surveillance and enforcement activities, especially in its interactions with immigrants and immigrant communities. Second, this request is "likely to contribute" significantly to a public understanding of government operations or activities, specifically by helping the public understand how and to what extent DHS utilizes AVCC in its work.

---

[12] *See, e.g.*, Just Futures Law, *ICE's EDDIE Program: How Ice Uses Biometric Scanner Tech to Ramp Up Raids* (Nov. 2020), https://justfutureslaw.org/wp-content/uploads/2020/11/EDDIEreport-PDF-revised-final.pdf.
[13] Just Futures Law & Mijente, *supra* note 7.
[14] Just Futures Law, *supra* note 5.

4

Third, disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject." JFL will publish responsive records and their analysis through reports, press releases, online posts, newsletters or other media to raise public awareness of the agency's use of data collection, sharing, and analysis in its immigration enforcement actions. JFL will also use the records to inform know-your-rights presentations and trainings for the public and attorneys. Using records produced from prior FOIA requests, JFL has previously published reports, facts sheets, and community resources on federal and local government agency use of data collection, sharing, and analysis, which have reached a broad audience and garnered significant public attention.[15] JFL's most recent FOIA requests on subjects related to this submission led to substantial press coverage of the government surveillance activities revealed in the responsive records.[16]

Finally, disclosure will contribute "significantly" to the public understanding of the agency's increasing use of private data in its immigration enforcement actions. The requested records will contribute to the public debate over the federal government's collection of private data for the purpose of surveillance, location tracking, and immigration enforcement and its implications on data privacy, security, and civil liberties. The public has significant interest in understanding the extent to which private data collection and delivery companies such as LexisNexis are profiting from the scraping and sale of consumer and other public data, yet many questions remain unanswered about these technologies and their impact on the public.

Based on the information above, Requestor has established, "with reasonable specificity[,] that [their] request pertains to operations of the government," and "the informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government." *Citizens for Responsibility and Ethics in Washington v. Department of Health and Human Services*, 481 F. Supp. 2d 99, 107–109 (D.D.C. 2006).

---

[15] *See, e.g.*, *Take Action Now: Fight for Immigrant Justice*, Nation (May 18, 2020), https://www.thenation.com/article/activism/take-action-now-fight-for-immigrant-justice (citing JFL's advisory "Surveillance During COVID-19"); Frank Bajak, *Report: Mobile Fingerprinting a Core Tool in U.S. Deportations*, Associated Press (Nov. 23, 2020), https://apnews.com/article/donald-trump-freedom-of-information-freedom-of-information-actlawsuits-immigration-0 fac264dc20da65c3e5924174f9db5aa (citing JFL report "Meet EDDIE: Biometric Tech Used against Immigrant Communities").

[16] *See supra* note 6.

5

### *2. Disclosure of the information requested is not in Requesters' commercial interest.*

Disclosure of the information requested is not in the commercial interest of JFL. 6 C.F.R. § 5.11(b). Any information obtained as a result of this FOIA request will be made available to the public at no cost.

Moreover, JFL is routinely granted fee waivers by government agencies, including FOIA Requests CBP-2020-060295,CBP-2021-008288, and ICE-2022-ICFO-13889.

For these reasons, this request for a full fee waiver should be granted. Alternatively, if the full fee waiver is not granted, Requesters seek all applicable reductions in fees. Further, if no fee waiver is granted and the anticipated costs associated with this request exceed $25.00, please notify requesters to obtain consent and provide an estimate of the additional fees.

## **Request for Expedited Processing**

Requesters are entitled to expedited processing of this request under the FOIA statute and implementing regulations, because there is a "compelling need" for the information requested. 5 U.S.C. § 552(a)(6)(E); 6 C.F.R. § 5.5(d)(ii). A "compelling need" is established when there exists an "urgency to inform the public about an actual or alleged Federal Government activity," and when the requester is a "person primarily engaged in disseminating information," 6 C.F.R. § 5.5(d)(ii).

### *1. Requesters are organizations primarily engaged in disseminating information to the public and there is an urgent need to inform the public about actual or alleged government activity.*

Dissemination of information to the public about actual or alleged government activity is a critical and substantial component of the Requester's mission and work. The records requested are urgently needed to inform the public about actual or alleged government activity, specifically, the federal government's use of powerful technologies to collect vast amounts of personal information. JFL represents and works with communities whose members are being arrested, detained, and deported every day, in part on the basis of information collected, analyzed and provided to ICE/DHS by LexisNexis through AVCC. Since the submission of JFL's prior FOIA request, DHS has publicly promoted its increasing investment in data tools, including artificial intelligence.[17] The fast pace of DHS adoption and development of new rights-impacting technologies makes real-time public awareness of the agency's activities essential. Delaying release of information about how DHS uses AVCC may rob consumers of the opportunity to engage with the agency about data use until after invasive practices are already cemented.

---

[17] *See* Kang, *supra* note 9.

6

**Certification**

Requesters certify that the above information is true and correct to the best of their knowledge pursuant to 6 C.F.R. § 5.5(e)(3).

We look forward to your response to our request for expedited processing within ten (10) business days, as required under 5 U.S.C. § 552(a)(6)(E)(ii)(I). Notwithstanding our request for expedited processing, we alternatively look forward to your reply to this request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I). If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We request that the records be made available electronically via the FOIA portal, by e-mail attachment, or by CD-ROM if necessary.

For questions regarding this request contact Dinesh McCoy at dinesh@justfutureslaw.org, cc: daniel@justfutureslaw.org, & madeline.batt@justfutureslaw.org. Thank you for your consideration.

Signed,

Dinesh McCoy
Attorney
Just Futures Law
95 Washington Street, Suite 104-149
Canton, MA 02021
dinesh@justfutureslaw.org

Daniel Werner
Attorney
Just Futures Law
daniel@justfutureslaw.org

Madeline Batt
Legal Fellow
Just Futures Law
madeline.batt@justfutureslaw.org

7